United States District Court
Southern District of Texas
ENTERED

MAY 2 9 2007

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROEL GONZALEZ and | § | |
| SONIA GONZALEZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-05-278 |
| | § | |
| CAMERON COUNTY, TEXAS and | § | |
| JESUS VILLANUEVA, *Individually* | § | |
| *and in his Official Capacity*, | § | |
| | § | |
| Defendants. | § | |

## OPINION & ORDER

BE IT REMEMBERED that on May __, 2007, the Court considered Defendant Jesus Villanueva's Motion for Summary Judgment in His Individual Capacity, Dkt. No. 25, Cameron County's Motion for Summary Judgment, Dkt. No. 26, and Plaintiffs' Response to Defendants' Motions for Summary Judgments and Plaintiff's [sic] Objections to Defendants' Summary Judgment Evidence, Dkt. No. 43.

Roel Gonzalez ("Mr. Gonzalez") and Sonia Gonzalez ("Mrs. Gonzalez") (collectively referred to as "Plaintiffs") filed suit against Cameron County, Texas ("County") for alleged civil rights violations and against Officer Jesus Villanueva ("Villanueva"), in his official and individual capacities, for alleged civil rights violations, assault and battery, and intentional infliction of emotional distress. Dkt. No. 13. Cameron County and Villanueva, in his individual capacity, have filed motions for summary judgment against Plaintiffs, claiming that there are no genuine issues of material fact regarding Plaintiffs' claims. Dkt. Nos. 25, 26. Plaintiffs filed their response to Defendants' motions, which included objections to Defendants' summary judgment evidence and requests for the Court to strike portions of such evidence. Dkt. No. 43.

I.    **Factual Background**

The undisputed facts are that on October 31, 2003, Plaintiffs Roel and Sonia Gonzalez, a married couple, were at their residence in San Benito, Texas, taking care of their 5-month-old granddaughter. Dkt. No. 13, at 2; Dkt. No. 26, Ex. 15 at 1; Dkt. No. 43, Exs. 1, 2. Mrs. Gonzalez was inside her home and Mr. Gonzalez was in the backyard of the property when Defendant Officer Jesus Villanueva and individuals from Child Protective Services ("CPS") arrived at the residence. Dkt. No. 43, Exs. 1, 2. Villanueva had been dispatched by the Cameron County Sheriff's Department to assist CPS employees with an evaluation and removal of Mr. and Mrs Gonzalez's granddaughter from their care. Dkt. No. 26, Ex. 15 at 2. Mrs. Gonzalez allowed the individuals to enter her home and evaluate her granddaughter. Dkt. No. 43, Ex. 2. Mrs. Gonzalez followed the CPS employees into the room where the child was, and she sat on the edge of the bed on which her granddaughter had been sleeping. *Id.* A short time thereafter, Officer Villanueva also entered the room, and CPS employees picked up the child and removed her from the room. Dkt. No. 26, Ex. 15; Dkt. No. 43, Ex. 2.

There is a factual dispute about the events that immediately followed. Mrs. Gonzalez states that when she realized CPS employees were removing her granddaughter from her home, she began to panic and stood up from where she had been sitting on the edge of the bed. Dkt. No. 43, Ex. 2 at 1. Officer Villanueva pushed her shoulders and threw her on the bed forcefully, and this action caused the bed rails to break and the bed to come into contact with her granddaughter's crib, causing the crib to break as well. *Id.* Mrs. Gonzalez then cried out for her husband, who had been in the backyard of the house during this time. *Id.*

Mr. Gonzalez states that he entered the house after hearing his wife's cries for help, and he encountered Officer Villanueva when he stepped inside the residence. *Id.*, Ex. 1 at 1. He and Villanueva exchanged words about Villanueva's authority to be inside the residence, and Villanueva became angry and forcefully pushed him into a wall several times.

Both plaintiffs claim that they suffered severe physical injuries as a result of Villanueva's actions. Dkt. No. 13, at 11; Dkt. No. 43, Exs. 1–5. They also claim to have

-2-

experienced pain and suffering, emotional and mental distress, personal humiliation, and shock. Dkt. No. 13, at 11; Dkt. No. 43, Exs. 1–5.

Officer Jesus Villanueva denies that he acted in the manner that Plaintiffs have alleged. Dkt. No. 25, Ex. 6 at ¶5; Dkt. No. 26, Ex. 22 at ¶5. Villanueva states that he stepped in between the CPS employee and Mrs. Gonzalez when the employee picked up the child from the bed in order to shield the employee and child from Mrs. Gonzalez as she moved in their direction. *Id.* Mrs. Gonzalez came into contact with his body as he acted as a shield, and she bounced off of him and landed on the bed. *Id.* He denies pushing Mrs. Gonzalez and denies having ever touched Mr. Gonzalez. *Id.*

## II.    Procedural Background

Plaintiffs filed the instant civil action on October 25, 2005, alleging causes of action against Cameron County, Texas and Jesus Villanueva in his official and individual capacities. Dkt. No. 13. As to Cameron County and Villanueva in his official capacity, Plaintiffs asserted violations of their Fourth Amendment rights to be free from unreasonable searches and seizures and excessive force, made applicable to states under the Fourteenth Amendment, and they therefore assert causes of action pursuant to 42 U.S.C. § 1983. Dkt. No. 13, at 4–9. Specifically, Plaintiffs claim that Defendants violated their constitutional rights "by using excessive force in the course of Defendants' custody of Mr. Gonzalez and Mrs. Gonzalez" and "by failing to intervene, where such intervention would have prevented the violations and/or injuries of Mr. Gonzalez and Mrs. Gonzalez." *Id.* at 5. Plaintiffs also claim that "Cameron County is liable because it sanctioned the custom, practice and/or policy or procedure of illegal searches, illegal seizures, excessive force and/or violating [Plaintiffs'] rights to be free of unwanton [sic] search and seizure," and such actions constitute deliberate indifference to Plaintiffs' rights. *Id.* at 7–8. Plaintiffs also maintain that the County failed to provide adequate training to its officers, alleging that "the training program in relation to the tasks the particular officer must perform is inadequate in the respect that the program fails to teach new police persons that beating citizens violates citizens' constitutional rights." *Id.* at 8. The only claims that are currently pending against Cameron County, Texas are those that have been filed pursuant to 42

-3-

U.S.C. § 1983.[1]  Dkt. No. 20, at 2.  As to Villanueva in his individual capacity, Plaintiffs have alleged causes of action for constitutional violations under § 1983, as well as claims for intentional infliction of emotional distress and assault and battery under Texas law.[2]  Dkt. No. 13, at 9–11.

## III.    Summary Judgment Standard

Summary judgment is appropriate when the movant has established that the pleadings, affidavits, and other evidence available to the Court demonstrate that no genuine issue of material fact exists, and the movant is thus entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); Piazza's Seafood World, LLC v. Odom, 448 F.3d 744, 752 (5th Cir. 2006); Lockett v. Wal-Mart Stores, Inc., 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." Piazza's Seafood World, LLC, 448 F.3d at 752 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The Court must view all evidence in a light most favorable to the non-moving party. Piazza's Seafood World, LLC, 448 F.3d at 752; Lockett, 337 F. Supp. 2d at 891.  Factual controversies must be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 36 F.3d 1069, 1075 (5th Cir. 1994).  Thus, the Court will not, "in the absence of proof, assume that the nonmoving party could or would prove the necessary facts." Id. (emphasis in original) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)); see also TIG Ins. Co. v. Eagle, Inc., Civ. Action No. 05-0179, 2007 WL

---

[1]On March 1, 2006, the Court granted Defendant Cameron County's Rule 12(b)()6) Motion to [Dismiss] Plaintiffs' Complaint and Brief in Support, Dkt. No. 6, dismissing all claims against the County that were brought under the Texas Constitution, brought under 42 U.S.C. § 1983 alleging vicarious liability of Villanueva as a county employee, and alleging intentional torts by the County.  Dkt. No. 14.

[2]On June 19, 2006, the Court denied Defendant Jesus Villanueva's Pro Se Answer and Rule 12(b)(6) Plea, Dkt. No. 18, stating that Villanueva had not proved that he was entitled to official immunity from Plaintiffs' intentional tort causes of action at that time.  Dkt. No. 20, at 4.

861153, at *2 (E.D. La. 2007) (quoting *Little*, 36 F.3d at 1075).

The non-movant has no duty to respond to a motion for summary judgment until the moving party meets its burden of showing that no genuine issue of fact exists. *See Lockett*, 337 F. Supp. 2d at 891 (citing Ashe v. Corley, 992 F.2d 540, 543 (5th Cir. 1993)). Thus, a Court may not grant summary judgment simply because there has been no opposition to the motion. Hibernia Nat'l Bank v. Admin. Cental Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985) (citing John v. Louisiana (Bd. of Trustees for State Colleges and Universities), 757 F.2d 698, 709 (5th Cir. 1985)). If the movant fails to meet its initial burden, the nonmovant is not required to respond to the motion. *John*, 757 F.2d at 708. However, if the movant satisfies its burden, the non-movant must then come forward with specific evidence to show that there is a genuine issue of fact. *Lockett*, 337 F. Supp. 2d at 891; *see also Ashe*, 992 F.2d at 543. The nonmovant may not merely rely on conclusory allegations or the pleadings. *Lockett*, 337 F. Supp. 2d at 891. Rather, it must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment. FED. R. CIV. P. 56(e); *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)). Thus, once it is shown that a genuine issue of material fact does not exist, "[s]ummary judgment is appropriate . . . if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" Arbaugh v. Y&H Corp., 380 F.3d 219, 222–23 (5th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

## IV.   Plaintiffs' Objections and Requests to Strike Defendants' Evidence

Plaintiffs have objected to specific portions of evidence presented by Officer Villanueva and Cameron County, and they ask that the Court strike those portions from the record. Dkt. No. 43, at 3, Apps. I, II. However, in making its determination on the merits of the instant motions, the Court has not relied on any of the evidence to which Plaintiffs have objected. Thus, Plaintiffs' objections are overruled and their requests to strike such

evidence are denied as moot. Tubbs v. Wynne Transport Services, Inc., Civ. Action No. H-06-0360, 2007 WL 1189640, at *10 (S.D. Tex. Apr. 19, 2007); City of Geneseo v. Utilities Plus, Civ. No. 05-2689, 2007 WL 1027294, at *14 (D. Minn. Apr. 3, 2007).

## V.   Analysis

### A.   *Plaintiffs' Claims Pursuant to 42 U.S.C. § 1983*

Title 42, Section 1983 of the United States Code provides a private right of action for redressing federal constitutional violations committed by persons acting under the color of state law. Casanova v. City of Brookshire, 199 F. Supp. 2d 639, 648 (S.D. Tex. 2000); Holland v. City of Houston, 41 F. Supp. 2d 678, 688 (S.D. Tex. 1999). To prevail on a claim under § 1983, a plaintiff must show that a defendant amenable to suit under the statute deprived plaintiff of a constitutional right. Casanova, 199 F. Supp. 2d at 649; Brown v. Hill, No. 05-71240, 2006 WL 2844147, at *4 (E.D. Mich. Sept. 29, 2006). Furthermore, the alleged constitutional deprivation must be shown to have been the result of deliberate indifference, and not merely the result of negligent conduct. Casanova, 199 F. Supp. 2d at 649 ("The negligent deprivation of life, liberty, or property is not a constitutional violation.") (citing Campbell v. City of San Antonio, 43 F.3d 973, 977 (5th Cir. 1995)). A plaintiff must support his allegations with specific facts establishing the constitutional violation and may not merely rely on conclusory statements. Casanova, 199 F. Supp. 2d at 649.

Plaintiffs allege that Defendants violated their constitutional rights secured by the Fourth and Fourteenth Amendments to be free from unreasonable seizures and excessive force. Dkt. No. 13, at 4–9. Each alleged constitutional violation against each defendant will be addressed below.

### i. Officer Jesus Villanueva

Plaintiffs have sued Officer Jesus Villanueva in both his official and individual capacities. Dkt. No. 13. Villanueva's liability in his official capacity, if any, is coextensive with Cameron County's liability. Holland, 41 F. Supp. 2d at 689. This is because "[a] suit against an official in his official capacity is not a suit against the official personally, but

rather is a suit against the official's office," and therefore, "it is no different than a suit against the [County] itself." *Id.* (citations omitted). Thus, when a government has received notice and an opportunity to respond to a claim in an official-capacity suit, the suit is treated as if it is against the government entity. *Id.* (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)). Consequently, "there is no longer a need to bring official-capacity actions against local government officials, for under *Monell* . . . local government units can be sued directly for damages and injunctive or declaratory relief." *Holland*, 41 F. Supp. 2d at 689 (quoting *Kentucky*, 473 U.S. at 167, n.14); *see* Monell v. Dep't of Soc. Service, 436 U.S. 658, 690 (1978). Thus, in the present case, Plaintiffs' claims against Officer Villanueva in his official capacity are "merely redundant and [are] of no independent legal significance." *Holland*, 41 F. Supp. 2d at 689.

### a. Excessive Force Claim Against Officer Villanueva In His Individual Capacity

Plaintiffs claim that Officer Villanueva unreasonably seized and used excessive force against them when they each encountered him inside their residence. Specifically, Plaintiffs aver that Villanueva seized Mrs. Gonzalez when he "pushed her down onto a bed" and "caused her severe injury," thereby violating her rights under the Fourth Amendment. *Id.* at 3, 5–7. Plaintiffs also assert that Villanueva violated Mr. Gonzalez's Fourth Amendment rights when he seized Mr. Gonzalez by "push[ing] [him] into a wall several times, causing [him] injury." *Id.* According to Plaintiffs, Villanueva's actions were "not performed in good faith to maintain or restore discipline, but [were] performed maliciously, intentionally, and sadistically for the very purpose of punishing and causing harm to Mr. Gonzalez and Mrs. Gonzalez," and his actions were therefore unjustified. *Id.* at 4.

As a preliminary matter, the Court must determine whether Villanueva's actions constituted "seizures" of Plaintiffs and whether Plaintiffs' allegations should be analyzed under the Fourth Amendment's "reasonableness" standard or the Fourteenth Amendment's "due process standard of liability for constitutionally arbitrary executive action." *See* County of Sacramento v. Lewis, 523 U.S. 833, 842–45 (1998); Flores v. City of Palacios, 381 F.3d 391; 396 (5th Cir. 2004) ("To bring a § 1983 excessive force claim under the Fourth Amendment, a plaintiff must first show that she was seized."). A claim that a police officer

used excessive force may violate either of these constitutional amendments. *Id.* at 842–44, 854. However, it may not violate both, because a "[s]ubstantive due process analysis is . . . inappropriate . . . if [Plaintiffs'] claim is 'covered by' the Fourth Amendment." *Id.* at 843. Therefore, if Officer Villanueva seized Mr. and Mrs. Gonzalez, Plaintiffs' claims should properly be analyzed under the Fourth Amendment. *Id.* at 843–44; *Holland*, 41 F. Supp. 2d at 689. If Villanueva did not seize Plaintiffs, their claims should be considered under the Fourteenth Amendment. *Lewis*, 523 U.S. at 843–45.

"A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'" Graham v. Connor, 490 U.S. 386, 395, n.10 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 19, n.16 (1968)). However, a seizure does not occur merely when there is a governmentally caused termination of freedom of movement, "nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement." *Lewis*, 523 U.S. at 844 (quoting Brower v. County of Inyo, 489 U.S. 593, 596–97 (1989)). *See* Thomas v. Frederick, 766 F.Supp. 540, 553 (W.D. La. 1991). Instead, a seizure under the Fourth Amendment occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied.*" *Lewis*, 523 U.S. at 844 (emphasis in original) (quoting Brower v. County of Inyo, 489 U.S. 593, 596–97 (1989)). Plaintiffs were allegedly seized during separate incidences, and the Court will address Plaintiffs' claims individually.

1. Roel Gonzalez

Roel Gonzalez states that he encountered Officer Villanueva when he entered his residence from the backyard of the home after hearing Mrs. Gonzalez's cries for assistance. Dkt. No. 43, Ex. 1 at 1. He asked Villanueva what was happening, and Villanueva told Mr. Gonzalez to keep his mouth shut and stay away. *Id.* Mr. Gonzalez asked Villanueva whether there was a warrant authorizing his presence in the house. *Id.* Villanueva responded by saying that he could arrest Mr. Gonzalez at any time, and he again told Mr. Gonzalez to keep his mouth shut. *Id.* Mr. Gonzalez then asked Villanueva of his intentions in the house, and Mr. Gonzalez states that he did not physically touch Villanueva. *Id.* At that point, Villanueva "pushed [Mr. Gonzalez] into a wall several times"

and threatened him. *Id.* Mr. Gonzalez also states that Villanueva said he did not need a warrant in order to enforce the law, and Mr. Gonzalez verbally responded to his statement. *Id.* Thereafter, Villanueva "pushed [Mr. Gonzalez] into the wall three more times," cursed at him, and threatened his and his family's lives. *Id.* Sonia Gonzalez states that she witnessed Officer Villanueva push Mr. Gonzalez into the wall. *Id.*, Ex. 2 at 1–2. Mr. Gonzalez states that the incident ended after two other officers came into the residence and calmed the situation. Mr. Gonzalez claims that his back and shoulders were severely injured as a result of being repeatedly pushed into the wall by Officer Villanueva, and that he sought medical attention immediately after the incident was over. *Id.*, Ex. 1 at 1–2.

In contrast, Officer Villanueva maintains that he "did not ever touch Roel Gonzalez" and that he did not physically restrain Mr. Gonzalez at any time. Dkt. No. 25, Ex. 6 at ¶5; Dkt. No. 26, Ex. 22 at ¶5. Furthermore, he did not use a weapon during the alleged encounter, and he did not arrest or detain Mr. Gonzalez. *Id.* Villanueva offers no other specific details regarding the alleged encounter between himself and Mr. Gonzalez.

An arrest or detention is not necessary to constitute a seizure under the Fourth Amendment. *See* Ikerd v. Blair, 101 F.3d 430, 433, 435 (5th Cir. 1996); *Thomas*, 766 F.Supp. at 553. Thus, in a case where a sheriff deputy grabbed a ten-year-old child by her right arm, jerked her out of her chair, and pulled her into another room when she refused to answer his question, the deputy's actions were found to constitute a seizure, triggering the protections of the Fourth Amendment. *Ikerd*, 101 F.3d at 432–33, 435 (holding that the district court had erroneously granted the deputy's motion for judgment as a matter of law). Similarly, when a deputy sheriff grabbed a woman by her arms, swung her around, shoved her violently against the side of his car, and held her against the car after they had exchanged words regarding a basis for her husband's impending arrest, the deputy's actions subjected the woman to a seizure under the Fourth Amendment, even though the deputy did not attempt to arrest the woman. *Thomas*, 766 F.Supp. at 545, 553.

In the present case, Roel Gonzalez states that Villanueva twice pushed him multiple times against a wall while threatening him and his family and instructing him to keep quiet. Examining the facts in the light most favorable to Plaintiff Roel Gonzalez, the Court determines that if proven at trial, Officer Villanueva's conduct would constitute a seizure

of Mr. Gonzalez because his actions would have terminated Mr. Gonzalez's freedom of movement through intentionally applied force. *See Lewis*, 523 U.S. at 844 (citing *Brower*, 489 U.S. at 596–97).    Accordingly, Mr. Gonzalez's claim against Villanueva for using excessive force against him must be analyzed under the "reasonableness" standard of the Fourth Amendment.

In order to prevail on a claim of excessive force under the Fourth Amendment, a plaintiff must establish that (1) he suffered some injury, (2) which resulted from force that was clearly excessive to the need for force, (3) and the excessiveness of that force was objectively unreasonable. *Ikerd*, 101 F.3d at 433–34; *Holland*, 41 F. Supp. 2d at 690; *Thomas*, 766 F.Supp. at 553–54.  The injuries alleged must be more than *de minimis*. *Holland*, 41 F. Supp. 2d at 690; *see Ikerd*, 101 F.3d at 433, n.7 (stating that "[p]roof of serious injury is no longer necessary").  The "reasonableness" inquiry is an objective standard: "the question is whether the officer['s] actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Holland*, 41 F. Supp. 2d at 690 (quoting *Graham*, 490 U.S. at 397).  The totality of the circumstances must be considered in determining whether the force used was objectively reasonable.  *Stroik v. Ponseti*, 35 F.3d 155, 158 (5th Cir. 1994); *Holland*, 41 F. Supp. 2d at 690; *see Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985).  "In gauging the objective reasonableness of the force used by a law enforcement officer, we must balance the amount of the force used against the need for that force." *Ikerd*, 101 F.3d at 434.  A constitutional violation does not result every time that contact between an officer and an individual occurs, and the amount of force that is permitted by the constitution must therefore be judged in the context in which the force is deployed and the injury occurs. *Id.*; *Holland*, 41 F. Supp. 2d at 691 (quoting *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973))).

Viewing the facts in a light most favorable to Roel Gonzalez, the Court finds that there is a genuine issue of material fact regarding Mr. Gonzalez's claim against Officer Villanueva for using excessive force against him, in violation of the Fourth Amendment. The Court determines that Mr. Gonzalez has presented sufficient evidence of each of the elements of his claim in order to survive summary judgment.  He produced medical records

-10-

which demonstrate that he suffered more than *de minimis* injury. Dkt. No. 43, Ex. 3. Furthermore, his account of his encounter with Officer Villanueva is evidence that Villanueva's force was clearly excessive, and that the excessiveness of that force was unreasonable. *Id.*, Ex. 1. Thus, the Court finds that the evidence Roel Gonzalez has produced in this case is sufficient for a reasonable jury to determine that Officer Villanueva used excessive force against him.

### 2. Sonia Gonzalez

Sonia Gonzalez also claims that Officer Villanueva seized her and used excessive force against her during the course of the incident in question. She maintains that when Officer Villanueva instructed the CPS employee to remove her granddaughter, the employee ran out of the room with the child. Dkt. No. 43, Ex. 2 at 1. "Without warning or provocation, Deputy Sheriff Villanueva pushed [Mrs. Gonzalez's] shoulders back and threw [her] on the bed. He threw [her] with such force [onto] the bed and [caused] the bed rails to break. . . . [T]he force with which he threw [her] upon the bed caused the bed to shift, which in turn brought it into contact with [her] granddaughter's crib, breaking it as well." *Id.* Mrs. Gonzalez states that she suffered severe injuries to her shoulders, back, and knee as a result of Villanueva's conduct, and she required surgery as a result of her injuries. *Id.*; *Id.*, Exs. 3, 4.

Conversely, Officer Villanueva declares that he did not push Sonia Gonzalez onto the bed. Dkt. No. 25, Ex. 6 at ¶5; Dkt. No. 26, Ex. 22 at ¶5. He maintains that Mrs. Gonzalez "bounced off of [him] when the CPS worker was picking the baby up off of the bed and Sonia Gonzalez lurched in the child and CPS worker's direction." Dkt. No. 25, Ex. 6 at ¶5; Dkt. No. 26, Ex. 22 at ¶5. He "simply used [his] body to shield the baby and the worker from Mrs. Gonzelez [sic]." *Id.* Villanueva states that "[t]he atmosphere there that day was understandably intense since neither of the Gonzalezes wanted to see their grandchild taken away," but he did not use a weapon during the encounter, nor did he arrest, physically restrain, or detain Mrs. Gonzalez. *Id.*

In order for a seizure to occur, intentional force must be applied so as to restrict or terminate an individual's freedom of movement. *See Lewis*, 523 U.S. at 844 (citing *Brower*, 489 U.S. at 596–97). In a case in which an individual claimed she was seized

when an officer grabbed her arm to steer her in the proper direction in which she had indicated that she wanted to go, the officer's conduct did not constitute a seizure of the individual. United States v. Wilson, 73 Fed. Appx. 78, 2003 WL 21756354, at *2–3 (5th Cir. 2003). No seizure occurred because there was "no other indication in the record that [the individual] was not free to move in any other direction she might choose," and there was no indication "that she was ever under [the officer's] control." Id. at *3. Additionally, the term "seizure" involves an element of possession and bringing something under physical control of another. California v. Hodari D., 499 U.S. 621, 624 (1991). Furthermore, a seizure occurs only if, in light of all the circumstances, "a reasonable person would have believed that he was not free to leave." Id. at 627–28 (emphasizing that this is a necessary, but not sufficient, test for determining whether a seizure occurred, because "a person has been seized 'only if'" and not "whenever" such belief would have existed).

If proven at trial, at its worst Officer Villanueva's conduct in the present case involved him pushing Sonia Gonzalez's shoulders with enough force to cause her to fall onto the bed from which she stood up. There is no evidence in the record regarding any other physical contact between Villanueva and Mrs. Gonzalez that could be characterized as exerting any type of control or restriction of Mrs. Gonzalez's movements. Examining the evidence in the light most favorable to Sonia Gonzalez, the Court finds that, even if proven at trial, Villanueva's conduct would not have sufficiently restricted or terminated Mrs. Gonzalez's freedom of movement so as to cause Mrs. Gonzalez to be seized. See Lewis, 523 U.S. at 844 (citing Brower, 489 U.S. at 596–97). Accordingly, Sonia Gonzalez's claim against Villanueva for using excessive force against her must be analyzed under the "arbitrary executive action" standard of the Fourteenth Amendment.

The "substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" Lewis, 523 U.S. at 847 (quoting Collins v. Harker Heights, 503 U.S. 115, 128 (1992)). "[O]nly the most egregious official conduct can be said to be "arbitrary in the constitutional sense.'" Lewis, 523 U.S. at 846 (quoting Collins, 503 U.S. at 128). Negligent conduct that inflicts harm will not be actionable under the Fourteenth Amendment, as it is "categorically beneath the threshold of constitutional due process."

-12-

*Lewis*, 523 U.S. at 849; Sperle v. Mich. Dep't of Corrections, 297 F.3d 483, 491 (6th Cir. 2002). Instead, "conduct *intended* to injure in some way unjustifiable by any governmental interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849 (emphasis added) (citing Daniels v. Williams, 474 U.S. 327, 331 (1986) ("Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property.") (emphasis in original).

Viewing the facts presented by the parties in a light most favorable to Sonia Gonzalez, the Court determines that she has shown the existence of a genuine issue of material fact that forms the entire basis of her Fourteenth Amendment claim against Villanueva for allegedly using excessive force against her and thereby intentionally depriving her of her constitutional right to life, liberty, and property under the Fourteenth Amendment. *See* Scott v. Harris, 127 S.Ct. 1769, 1776 (2007) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in original))). Thus, the Court determines that Sonia Gonzalez has produced evidence sufficient for a reasonable jury to determine that Officer Villanueva used excessive force against her, in violation of the Fourteenth Amendment.

### b. Qualified Immunity

Officer Villanueva has asserted that he is entitled to qualified immunity from suit in the instant matter and has moved for summary judgment on that basis. Dkt. No. 25, at 12. In determining whether an individual acting under the color of state law is entitled to qualified immunity, the Court must undergo a two-step analysis. Pierce v. Smith, 117 F.3d 866, 872 (5th Cir. 1997); *Holland*, 41 F. Supp. 2d at 695. First, the Court must determine whether Plaintiffs' allegations involve violations of a clearly established constitutional right. *Id.* Individuals acting under the color of state law may be entitled to qualified immunity from civil damages unless they have violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); *Thomas*, 766 F.Supp

-13-

at 558. In order for a constitutional right to be deemed clearly established "its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violated that right.'" *Hope*, 536 U.S. at 739 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). However, this does not mean that the precise conduct in question must have specifically been found unlawful. *Hope*, 536 U.S. at 739 (stating that "officials can still be on notice that their conduct violates established law even in novel factual circumstances"). Instead, the unlawfulness of the conduct must be apparent. *Id.*

If Plaintiffs are successful in establishing that a clearly established right has been violated, the second step of the analysis is addressed. *Pierce*, 117 F.3d at 872; *Holland*, 41 F. Supp. 2d at 695. The Court must address the "objective legal reasonableness of the defendant's conduct of the circumstances." *Pierce*, 117 F.3d at 872; *Holland*, 41 F. Supp. 2d at 695. Objective reasonableness is gauged by whether at the time all reasonable officials in the same circumstances would have come to the realization that the conduct complained of violated a constitutional provision. *Pierce*, 117 F.3d at 871. Although the question of objective reasonableness may be considered as a question of law when relevant and historic facts are undisputed, "a denial of summary judgment based on a material fact dispute would still be appropriate if there are 'underlying historical facts in dispute that are material to the resolution of the questions whether the defendants acted in an objectively reasonable manner.'" Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994) (quoting Lampkin v. City of Nacogdoches, 7 F.3d 430, 435 (5th Cir. 1993)); *Pierce*, 117 F.3d at 871. Thus, summary judgment on the basis of qualified immunity will be precluded by conflicting factual accounts of the circumstances surrounding the incident in question and whether the conduct displayed was objectively reasonable. Hillyer v. Tex. Dep't of Corrections, 55 Fed. Appx. 716 (5th Cir. 2002); *Mangieri*, 29 F.3d at 1016, n.6 (citing Johnston v. City of Houston, 14 F.3d 1056, 1061 (5th Cir. 1994)); *Holland*, 41 F. Supp. 2d at 697.

In the present case, the rights secured by the Fourth and Fourteenth Amendments were allegedly violated. The Court finds that at the time the incident in question occurred, the right to be free from excessive force was clearly established under federal law. *Holland*, 41 F. Supp. 2d at 696; *Thomas*, 766 F.Supp at 558. *See* Stickney v. Trikes, 909

-14-

F.2d 1485, 1990 WL 110855, at *1–2 (6th Cir. 1990) (stating that a change in the legal analysis of an excessive force claim did not change clearly established law, and "[t]he only knowledge that the officers needed was the knowledge that excessive force was not permitted").  Thus, Plaintiffs' claims involve alleged violations of clearly established constitutional rights.   Furthermore, Plaintiffs and Defendant Villanueva have each presented different versions of the facts surrounding the incident in question.  *Compare* Dkt. No. 25, Ex. 6; Dkt. No. 25, Ex. 6 at ¶5; Dkt. No. 26, Ex. 22 at ¶5 *with* Dkt. No. 43, Exs. 1, 2.  The Court determines that there is a genuine dispute regarding a material fact pertaining to Officer Villanueva's actions and whether such conduct was objectively reasonable under the circumstances then existing.  Accordingly, at this time the Court cannot ascertain whether Villanueva's actions were objectively reasonable and thus whether he is entitled to qualified immunity.  Therefore, based on the foregoing evidence and analysis, the Court concludes that Defendant Jesus Villanueva is not entitled to qualified immunity from Plaintiffs' claims and is therefore not entitled to summary judgment on Plaintiffs' claims asserted against him in his individual capacity under 42 U.S.C. § 1983.


## ii. Cameron County, Texas

Plaintiffs Roel and Sonia Gonzalez have also filed suit against Cameron County, Texas, alleging that the County violated their constitutional rights by "sanction[ing] the custom, practice and/or policy or procedure of illegal searches, illegal seizures, excessive force and/or violating their rights to be free of unwanton [sic] search and seizure." Dkt. No. 13, at 7.  They aver that Cameron County is liable under § 1983 because the use of excessive force by county officials "is so common and well settled as to constitute a custom that fairly represents official municipal policy." *Id.* at 7–8.  Mr. and Mrs. Gonzalez also contend that the County has provided inadequate training of its law enforcement officers, and this amounts to deliberate indifference to their constitutional rights by failing to train officers "that beating citizens violates citizens' constitutional rights." *Id.* at 8. The Court will individually examine each of Plaintiffs' claims against Cameron County.

### a. Excessive Force claim

"When the claim is one of excessive force, the key to recovering against a

municipality under § 1983 is demonstrating that a deprivation of a constitutional right was inflicted pursuant to an official policy or custom." *Holland*, 41 F. Supp. 2d at 697. In the Fifth Circuit, official policy and custom are defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Id.* (quoting Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992)). A single incident, or the occurrence of relatively few incidents, is not enough to establish the existence of a custom. *See* Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002); Campbell v. City of San Antonio, 43 F.3d 973, 977 (5th Cir. 1995)). The policy or custom must be the proximate cause of the injuries sustained by the Plaintiffs. *Holland*, 41 F. Supp. 2d at 698. The decision to implement or formulate the policy must "reflect[] deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* at 699 (quoting Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 411 (1997)). Municipalities will not be held liable for the acts of their employees under a theory of respondeat superior. *See* Monell v. Dep't of Soc. Servs. Of City of N.Y., 436 U.S. 658, 663 n.7 (1978); *Holland*, 41 F. Supp. 2d at 699. Instead, the execution of the custom or policy of the municipality must actually cause the complained-of injury. *Holland*, 41 F. Supp. 2d at 699. "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* at 699–700 (quoting *Brown*, 520 U.S. at 405).

In the instant action, Defendant Cameron County maintains that it is entitled to summary judgment on Plaintiffs' § 1983 claim for excessive force. The County maintains there is no evidence that the County had a policy, practice or custom of using excessive force or acting with deliberate indifference during seizures, that the incident in question was

the product of a widespread pattern of which the County had notice, that what occurred was anything more than an isolated occurrence, that any policy or unofficial custom was the cause in fact of the incident, or that Plaintiffs suffered anything more than *de minimis* injuries. Dkt. No. 26, at 8–9. Cameron County produced evidence to demonstrate the absence of a custom condoning the use of excessive force during the course of seizures. It demonstrated that it abides by the Texas Commission on Law Enforcement Officer Standards and Education ("TCLEOSE") by requiring newly hired officers to be certified by the TCLEOSE and making continued certification a condition of employment retention. *Id.*, Exs. 1–3, 12. Additionally, such evidence shows that the County's policy was applied to Officer Villanueva at the time that he was hired, and he complied with the policy. *Id.* Cameron County also produced evidence that Officer Villanueva had engaged in continuing law enforcement education involving expandable baton training, as well as basic, intermediate, and advanced level officer training. *Id.*, Exs. 4, 6, 8, 9. Additionally, Villanueva complied with his continuing obligations to remain certified by the TCLEOSE. *Id.*, Ex. 13.

In response to Cameron County's motion for summary judgment, Plaintiffs assert that there is evidence to support their contention that the County has engaged in a pattern of deliberate indifference toward, and violations of, constitutional rights. Dkt. No. 43, at 11. Specifically, Plaintiffs state that "defendant County was on notice that Defendant Villanueva had a history of using excessive force . . . and abusing his authority as an officer of the law," but the County failed to take any action in response to his conduct. *Id.* Plaintiffs aver that such inaction ratified his conduct and equates to a policy of indifference. *Id.* at 12–13.

Plaintiffs have produced evidence of three instances in which a complaint had been filed with the County pertaining to Officer Villanueva's conduct. First, Plaintiffs provided a report in which Hector Suarez, who is Villanueva's fiancee's ex-husband, complained of Villanueva's conduct concerning him, Villanueva's fiancee, and his and Villanueva's fiancee's daughter in February 2003. *Id.*, Ex. 6. The report was prepared by a Cameron County Sheriff's Deputy who had no personal knowledge of Villanueva's complained-of

-17-

actions.[3] *Id.* The report produced by Plaintiffs consisted wholly of hearsay statements complaining of unofficial and personal actions that Villanueva allegedly had engaged in at some unknown time. *See id.*; Roberts v. City of Shreveport, 397 F.3d 287, 295 (5th Cir. 2005) (stating that inadmissible hearsay evidence did not support claims of unconstitutional deadly force). Furthermore, the report does not indicate that any complaints involved Villanueva using force against an individual.

Second, Plaintiffs produced an affidavit by Eloy Robles that described an encounter he had with a "Cameron County Sheriff's Deputy" in May 2001. *Id.*, Ex. 7. Mr. Robles stated that he had struck up a conversation with a woman, asked to take her to lunch, and she then informed him that she was already in a romantic relationship with someone. *Id.* Two weeks later, Mr. Robles saw the woman at a store and engaged in a brief conversation with her. *Id.* Upon returning to his car, a County Sheriff's car pulled up to his location, and the deputy allegedly told him to leave his girlfriend alone and that he was "going to come after" Mr. Robles. *Id.* The affidavit never identifies the deputy; it only states that the deputy was "about 5' 8", heavy set, [and had a] moustache and thin sunglasses." *Id.* Plaintiffs provide no additional evidence demonstrating that the deputy described in the affidavit was actually Officer Villanueva, and the affidavit contains hearsay statements. Additionally, there is no indication that the deputy ever used any force during the incident. Furthermore, the evidence was in the form of an affidavit, not an official complaint or charge. Nothing in the record indicates that the affidavit was ever made known to any county authorities.

The third piece of evidence involves an official complaint made by Magdalena Torres and Dalia Rodriguez against Officer Villanueva for allegedly "using unnecessary force in arresting Dalia Rodriguez." *Id.*, Ex. 8. The complaint describes an incident in which Villanueva, acting in his official capacity, entered a residence to search for a runaway juvenile. *Id.* Dalia Rodriguez stepped in front of Villanueva to block his access, and a struggle ensued that resulted in Ms. Rodriguez being arrested "for interfering with

---

[3]Mr. Suarez had requested assistance from a County Sheriff's Deputy in order to "pick up several items of clothing and a cell phone belonging to his daughter . . . from his ex-wife's residence." Dkt. No. 43, Ex. 6.

-18-

Public Duties." *Id.* at 1–2. Thereafter, she attempted to escape. *Id.* at 2. The Sergeant who compiled the complaint indicated that Officer Villanueva had been informed that a complaint had been filed against him, it would be referred to a Lieutenant, and the Sergeant indicated that he had done so on the date the report was created. *Id.*

Based on the foregoing evidence, the Court determines that Plaintiffs have failed to produce evidence establishing a genuine issue of material fact regarding their claim that "defendant County was on notice that Defendant Villanueva had a history of using excessive force . . . and abusing his authority as an officer of the law," and that the County's inaction constitutes deliberate indifference to Plaintiffs' constitutional rights. Dkt. No. 43, at 11. At best, Plaintiffs' evidence involves one incident in which Villanueva was acting in his official capacity and was alleged to have used excessive force against an individual who was subsequently arrested for interfering with an officer's official duties. Plaintiffs have failed to show that the County ratified any of Officer Villanueva's allegedly wrongful conduct. They did not provide any evidence demonstrating that there was a failure of the County to respond to the incident or that an investigation did not clear Villanueva of any allegations of wrongful conduct. The Court finds that Plaintiffs have failed to produce evidence sufficient to establish a pattern or practice that is so widespread as to constitute a custom that caused the deprivation of their constitutional rights. *Campbell*, 43 F.3d at 877; Davis v. City of New York, 228 F. Supp. 2d 327, 337, 346 (S.D. N.Y. 2002). *See Pineda*, 291 F.3d at 329 (holding that offense reports produced regarding eleven incidents did not create an pattern of conduct in a large metropolitan area sufficient to survive summary judgment). Although the area in which the incident in question occurred is in a much smaller municipal area than the area addressed in *Pineda*, the Court declines to find that just one official complaint concerning an allegation of excessive force establishes a pattern of deliberate indifference to constitutional rights so at to allow Cameron County to be open to liability to Plaintiffs' claims. Thus, Plaintiffs have also failed to produce evidence that any governing body or official with policy-making authority had any knowledge of any custom that caused the deprivation of Plaintiffs' constitutional rights. Accordingly, the Court concludes that Defendant Cameron County is entitled to summary judgment on Plaintiffs' excessive force claim under 42 U.S.C. § 1983.

### b. Claim for Failure to Provide Adequate Training

In order to assert a claim under § 1983 for failure to provide adequate training, a plaintiff must show that a defendant's failure to train its employees demonstrates a deliberate or conscious choice to jeopardize Plaintiff's constitutional rights. *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989)). More than an isolated incident of lack of training must be shown in order to constitute deliberate indifference. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 459 (5th Cir. 2001); *Snyder*, 142 F.3d at 798. Rather, a plaintiff must generally establish a pattern of lack of training or supervision in order to establish municipal liability. *Thompson*, 245 F.3d at 459; *Snyder*, 142 F.3d at 798. Furthermore, "a plaintiff must allege with specificity how a particular training program is defective" in order for a municipality to be held liable. *Roberts*, 397 F.3d at 293.

Plaintiffs have asserted that the County failed to provide adequate training to its officers by "fail[ing] to teach new police persons that beating citizens violates citizens' constitutional rights." Dkt. No. 13, at 8. Defendant Cameron County asserts that there is no evidence in support of this allegation. Dkt. No. 26, at 8. Defendant produced evidence showing that it required its officers to become, and remain, licensed by the TCLEOSE, and that Officer Villanueva complied with those requirements. *Id.*, Exs. 1, 2, 3, 13. Villanueva also completed basic, intermediate, and advanced reserve officer training courses that were approved by the TCLEOSE. *Id.*, Exs. 6, 8, 9. He also completed training pertaining to the use of an expandable baton. *Id.*, Ex. 4.

Plaintiffs failed to produce any evidence regarding their allegations that Cameron County failed to adequately train its officers. None of Plaintiffs' items of evidence refer to the County's failure to train its officers. *See id.*, Exs. 1–7. The only references in their summary judgment response regarding their claim of inadequate training is a conclusory statement that "Defendant County failed to train and failed to supervise Defendant Villanueva" and an excerpt of a case mentioning failure to train in the context of municipal deliberate indifference. Dkt. No. 43, at 11, 14. Plaintiffs may not simply rely on these types of conclusory allegations in order to defeat summary judgment. *See Lockett*, 337 F. Supp. 2d at 891. Instead, they must produce evidence showing specific facts identifying

-20-

a genuine issue to be determined at trial. FED. R. CIV. P. 56(e); *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891.

Based on the foregoing, the Court concludes that there is no genuine issue of material fact as to Plaintiffs' claim that Defendant Cameron County failed to provide adequate training to its officers. Plaintiffs have failed to produce any evidence demonstrating that the County failed to train its officers adequately or that any such failure demonstrated a deliberate choice to jeopardize constitutional rights. Plaintiffs also failed to show that the County engaged in any pattern of lack of training. Therefore, the Court determines that Cameron County is entitled to summary judgment on Plaintiffs' claim under 42 U.S.C. § 1983 for failure to provide its officers with adequate training.

### B.   *Claims for Assault & Battery and Intentional Infliction of Emotional Distress*

Roel and Sonia Gonzalez have also asserted claims against Officer Villanueva, in his individual capacity, for assault and battery and intentional infliction of emotional distress. Dkt. No. 13. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Villanueva previously filed a motion to dismiss these claims on the basis of official immunity. Dkt. No. 18. The Court denied his motion. Dkt. No. 20. The party moving for summary judgment bears the responsibility of informing a court of the specific basis for the motion and identifying with particularity the portions of the matter that do not contain a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Villanueva's motion for summary judgment merely stated that "Defendant files this motion for summary judgment on the Plaintiff's [sic] cause of action under Section 1983." Dkt. No. 25, at 4. Therefore, the Court finds that Plaintiffs' causes of action against Jesus Villanueva for assault and battery and intentional infliction of emotional distress are still pending.

### IV.   Conclusion

Based on the foregoing, the Court:

(1)   **DENIES AS MOOT** Plaintiff's [sic] Objections to Defendants' Summary Judgment Evidence, Dkt. No. 43;

(2)   **DENIES** Defendant Jesus Villanueva's Motion for Summary Judgment in his

Individual Capacity, Dkt. No. 25; and

(3)     **GRANTS** Cameron County's Motion for Summary Judgment in its entirety, Dkt. No. 26.

Accordingly, at this time the only claims that remain pending in the instant action are Plaintiffs' causes of action against Jesus Villanueva, in his individual capacity, for constitutional violations under 42 U.S.C. § 1983, intentional infliction of emotional distress, and assault and battery.

DONE at Brownsville, Texas, this ___ day of May, 2007.


Hilda G. Tagle
United States District Judge